Slip Op. 17-128

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **IRWIN INDUSTRIAL TOOL COMPANY,**<br><br>        **Plaintiff,**<br>**v.**<br><br>**UNITED STATES,**<br><br>        **Defendant.** | **Before: Claire R. Kelly, Judge**<br><br>**Court No. 14-00285** |

## OPINION

[Granting Plaintiff's motion for summary judgment and denying Defendant's motion for reconsideration.]

Dated: September 21, 2017

Frances Pierson Hadfield, Crowell & Moring LLP, of New York, NY, and Daniel J. Cannistra, Crowell & Moring LLP, of Washington, DC, for plaintiff.

Guy R. Eddon, Trial Attorney, U.S. Department of Justice, International Trade Field Office, of New York, NY, for defendant. With him on the brief were Chad A. Readler, Acting Assistant Attorney General, and Amy M. Rubin, Assistant Director. Of counsel on the brief was Michael W. Heydrich, Office of Assistant Chief Counsel, U.S. Customs and Border Protection.

Kelly, Judge:   Before the court are Plaintiff's motion for summary judgment and

Defendant's motion for reconsideration of the court's prior opinion, Irwin Indus. Tool Co.

v. United States, 41 CIT __, 222 F. Supp. 3d 1210 (2017) ("Irwin Indus. Tool Co."). See

Pl.'s Mot. Summary J., May 8, 2017, ECF No. 53; Def.'s Resp. Opp'n Pl.'s Mot. Summary

J. and Def.'s Mot. Reconsideration, Jun. 7, 2017, ECF No. 57. For the reasons that follow,

Plaintiff's motion for summary judgment is granted and Defendant's motion for

reconsideration is denied.

## BACKGROUND

The court assumes familiarity with the facts of this case as discussed in the previous opinion, see Irwin Indus. Tool Co., 41 CIT at __, 222 F. Supp. 3d at 1213–15, and here recounts the facts relevant to the court's review of the pending motions for summary judgment and reconsideration.

This case involves the classification of five styles of Plaintiff's hand tools.[1]  Plaintiff, Irwin Industrial Tools, is the importer of record of the subject hand tools in the 46 subject entries.  Am. Compl. ¶¶ 3, 7, May 4, 2015, ECF No. 13.  United States Customs and Border Protection ("CBP" or "Customs") liquidated the subject entries under subheading 8204.12.00, Harmonized Tariff Schedule of the United States (2013) ("HTSUS"),[2] a category covering "hand-operated spanners and wrenches . . . : Adjustable, and parts thereof."  Id.  Plaintiff timely filed 14 administrative protests challenging CBP's classification of the subject merchandise.  Id. at ¶ 9.  CBP denied Plaintiff's protests.  Id.

[1] The five styles of hand tools are "large jaw locking pliers," "curved jaw locking pliers," "long nose locking pliers with wire cutter," "curved jaw locking pliers with wire cutter," and "straight jaw locking pliers."  Pl.'s 56.3 Statement of Undisputed Material Facts ¶¶ 33, 42, 52, 57, 65, 79, May 8, 2017, ECF No. 53 ("Pl.'s 56.3 Statement"); Def.'s Resp. Pl.'s Rule 56.3 Statements of Undisputed Material Facts ¶¶ 33, 42, 52, 57, 65, 79, Jun. 7, 2017, ECF No. 57 ("Def.'s 56.3 Statement"). Although the Amended Complaint indicated that only four styles of locking hand tools were at issue in this case, not including "straight jaw locking pliers," Am. Compl. ¶ 17, May 4, 2015, ECF No. 13, the chart of the models of subject merchandise that Plaintiff provided in its motion for summary judgment includes five styles of locking pliers, including straight jaw locking pliers.  See Pl.'s 56.3 Statement ¶¶ 33, 65.  Defendant admitted the contents of this chart as undisputed fact. Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 33, 65.  Accordingly, it is evident to the court that five styles of locking hand tools are at issue in this case, and that the subject merchandise includes certain models of Plaintiff's "straight jaw locking pliers."

[2] All references to the HTSUS refer to the 2013 edition, the most recent version of the HTSUS in effect at the time of Plaintiff's entries of subject merchandise, which entered between November 11, 2012 and June 11, 2013.  See Am. Compl. ¶ 7.  The 2012 edition of the HTSUS, in effect at the beginning of the period during which Plaintiff entered the subject merchandise, is the same in relevant part to the 2013 edition.

Plaintiff commenced this action to challenge the classification of various hand tools, referred to by Plaintiff collectively as "locking pliers." <u>See</u> Am. Compl.  Defendant moved for summary judgment, requesting the court to hold that the subject hand tools are properly classified as adjustable wrenches within subheading 8204.12.00, HTSUS.  Def.'s Mot. Summ. J., Jan. 6, 2017, ECF No. 43; Mem. Supp. Def.'s Mot. Summ. J. 10–27, Jan. 6, 2017, ECF No. 43.  Plaintiff opposed the motion, arguing that the subject hand tools are not classifiable as adjustable wrenches within subheading 8204.12, HTSUS, but rather as pliers within subheading 8203.20, HTSUS, or as vises or clamps within subheading 8205.70, HTSUS.  <u>See</u> Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., Feb. 6, 2017, ECF No. 44.

The court denied Defendant's motion for summary judgment.  <u>Irwin Indus. Tool Co.</u>, 41 CIT at __, 222 F. Supp. 3d at 1229.  The court construed the relevant tariff terms and determined as a matter of law that the term "wrench," as it appears in subheading 8204.12.00, HTSUS, refers to "a hand tool that has a head with jaws or sockets having surfaces adapted to snugly or exactly fit and engage the head of a fastener (such as a bolt-head or nut) and a frame with a singular handle with which to leverage hand pressure to turn the fastener without damaging the fastener's head." <u>Id.</u>, 41 CIT at __, 222 F. Supp. 3d at 1221.  The court further determined as a matter of law that the term "pliers," as it appears in subheading 8203.20.6030, HTSUS, refers to "a versatile hand tool with two handles and two jaws that are flat or serrated and are on a pivot, which must be squeezed together to enable the tool to grasp an object." <u>Id.</u>, 41 CIT at __, 222 F. Supp. 3d at 1221–22, 1224.  Finally, the court determined as a matter of law that the term "vises, clamps

and the like," as it appears in subheading 8205.70.0060, HTSUS, refers to "tools with a frame and two opposing jaws, at least one of which is adjustable, which are tightened together with a screw, lever, or thumbnut, to press firmly on an object and thereby hold the object securely in place while the user is working." Id., 41 CIT at __, 222 F. Supp. 3d at 1225–26.

The court determined that Defendant had failed to establish as a matter of law that the subject merchandise possesses the qualities of a wrench and does not possess the qualities of pliers or vises or clamps.  Id., 41 CIT at __, 222 F. Supp. 3d at 1213–15, 1226–29.  The court further determined, upon inspecting the physical samples of the subject merchandise entered into evidence by Plaintiff, that the subject hand tools may fit within the relevant tariff subheadings for pliers or for vises or clamps, but noted that "[t]he court need not reach that issue as all that is before the court is the Defendant's motion, which is denied." Id., 41 CIT at __, 222 F. Supp. 3d at 1228–29 (internal citations omitted).

On May 8, 2017, Plaintiff moved for summary judgment, arguing that undisputed facts support classification of the subject merchandise as a matter of law as pliers within subheading 8203.20.6030, HTSUS.  See Mem. L. Supp. Pl.'s Mot. Summary J. 14–27, May 8, 2017, ECF No. 53 ("Pl.'s Br.").  Defendant opposed Plaintiff's motion and moved the court to reconsider the conclusions reached in Irwin Indus. Tool Co.  See Mem. L. Opp'n Pl.'s Mot. Summ. J. and Supp. Def.'s Mot. Reconsideration, Jun. 7, 2017, ECF No. 57 ("Def.'s Br.").  Defendant argues that the court should reconsider the definitions of pliers and wrenches established in Irwin Indus. Tool Co. Id. at 5–6.  Although Defendant "concedes that the tools at issue meet the Court's definition" of pliers, it argues that the

court's definition of pliers is "overly inclusive," contending that the court erred because

"the Court's definition of 'pliers' explicitly includes locking pliers."[3]  Id.  Defendant also

argues that the court's definition of wrenches "necessarily excludes certain tools that are

known and marketed as wrenches."  Id. at 6.  Additionally, Defendant requests the court

to reconsider the relevancy of "use" to the meaning of the tariff terms at issue.[4]  Id. at 7.

---

[3] The court stated that pliers' "jaws may, or may not, lock together to hold the object while using the tool."  Irwin Indus. Tool Co., 41 CIT at __, 222 F. Supp. 3d at 1224.

[4] In Irwin Indus. Tool Co., the court relied upon the Court of Appeals for the Federal Circuit precedent to find that

> [a]n eo nomine tariff term may implicate use in one of two ways: 1) a tariff term written as an eo nomine provision may nonetheless be controlled by use and, if it is, the court should declare it as such, [GRK Canada, Ltd. v. United States, 761 F.3d 1354, 1359, n.2 (Fed. Cir. 2014) ("GRK II")]; see also StoreWALL, LLC, 644 F.3d at 1365–67 (Dyk, J., concurring); or 2) a tariff term may imply that the use of the object is of "paramount importance" to its identity such that articles with the requisite physical characteristics will nonetheless be excluded if they are in fact designed and intended for another use.  GRK II, 761 F.3d at 1358 (citing United States v. Quon Quon Co., 46 CCPA 70, 73 (1959)).

> Here, although a wrench may indeed be designed for a use, nothing about the tariff term for "wrenches" suggests a type of use such that the court should declare the tariff term one controlled by use.  GRK II, 761 F.3d at 1358–59 (quoting Carl Zeiss, Inc., 195 F.3d at 1379).  The word "use" or similar words such as "for" or "of a kind" do not appear in the tariff term.  See Clarendon Mktg., Inc. v. United States, 144 F.3d 1464, 1467 (Fed. Cir. 1998).  Furthermore nothing in the term itself, including the Section and Chapter Notes or the Explanatory Notes, indicates that, as a matter of law, the use of articles classified under the provision would outweigh the importance of the physical characteristics of the item.  See Primal Lite, Inc. v. United States, 182 F.3d 1362, 1363–64 (Fed. Cir. 1999); see GRK II, 761 F.3d at 1359, n.2 (citing StoreWALL, 644 F.3d at 1365–67 (Dyk, J., concurring)).  Nothing indicates that an object must be considered a wrench if it can be used to wrench or turn a fastener.  Therefore, as a matter of law, the tariff term for "wrenches" is an eo nomine term, not one controlled by use.

> This court must also consider whether use is of "paramount importance."  See GRK II, 761 F.3d at 1358–59 (quoting Quon Quon Co., 46 CCPA at 73).  To say that use is of paramount importance is not to say that a product has a use.  All products have uses. . . . Although design and intended use is implicated in all tariff terms, it will only be of paramount importance when, as a factual matter, a product

## JURISDICTION AND STANDARD OF REVIEW

The court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [Tariff Act of 1930, as amended, 19 U.S.C. § 1515 (2012)]," 28 U.S.C. § 1581(a) (2012), and reviews such actions de novo.  28 U.S.C. § 2640(a)(1) (2012).

The court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a).  In order to raise a genuine issue of material fact, it is insufficient for a party to rest upon mere allegations or denials, but rather that party must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Processed Plastic Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006); Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 835–36 (Fed. Cir. 1984).

## UNDISPUTED FACTS

Plaintiff is the importer of record of the subject merchandise in the 46 entries at issue in this case, which entered between November 11, 2012 and June 11, 2013.  Pl.'s

---

that satisfies the physical requirements of a tariff term is in fact designed and intended for another use.  See id.  A wrench is designed for turning fasteners without damaging the fastener's head.  A wrench must possess certain physical characteristics (a frame with a singular handle; a head with jaws or sockets having surfaces that snugly or exactly fit and engage the head of a fastener) that are a function of the intended use of a wrench to exert pressure on the fastener to turn it without damaging the fastener's head.

Id.

56.3 Statement of Undisputed Material Facts ¶¶ 2, 5, May 8, 2017, ECF No. 53 ("Pl.'s

56.3 Statement"); Def.'s Resp. Pl.'s Rule 56.3 Statements of Undisputed Material Facts

¶¶ 2, 5, Jun. 7, 2017, ECF No. 57 ("Def.'s Resp. Pl.'s 56.3 Statement").  CBP liquidated

all subject entries under subheading 8204.12.00, HTSUS.[5]  Pl.'s 56.3 Statement ¶ 6;

Def.'s Resp. Pl.'s 56.3 Statement ¶ 6.  Plaintiff timely filed 14 protests challenging the

classification of the subject merchandise.  Pl.'s 56.3 Statement ¶ 7; Def.'s Resp. Pl.'s 56.3

Statement ¶ 7.  Plaintiff paid all liquidated duties, charges, exactions, and fees on the

entries at issue prior to the commencement of this action.  Pl.'s 56.3 Statement ¶ 8; Def.'s

Resp. Pl.'s 56.3 Statement ¶ 8.

The subject merchandise consists of the following styles of locking hand tools:

"large jaw locking pliers," "curved jaw locking pliers," "long nose locking pliers with wire

cutter," "curved jaw locking pliers with wire cutter," and "straight jaw locking pliers."  Pl.'s

56.3 Statement ¶ 33; Def.'s Resp. Pl.'s 56.3 Statement ¶ 33.  The tools at issue are hand

tools referred to, inter alia, as "locking pliers."[6]  Pl.'s 56.3 Statement ¶ 3; Def.'s Resp. Pl.'s

56.3 Statement ¶ 3.  Each of the styles of hand tools at issue have two handles and two

serrated jaws on a fulcrum.  Pl.'s 56.3 Statement ¶ 13; Def.'s Resp. Pl.'s 56.3 Statement

¶ 13.  The subject hand tools possess "compound leverage systems that lock jaws and

hold various shapes and sizes of work."  Pl.'s 56.3 Statement ¶ 34; Def.'s Resp. Pl.'s 56.3

---

[5] Subheading 8204.12.00, HTSUS, covers "hand-operated spanners and wrenches . . . . : Adjustable, and parts thereof."  Subheading 8204.12.00, HTSUS.

[6] Defendant "admits that 'locking pliers' is one of numerous descriptions applied to the subject merchandise but denies any inference that the merchandise is classifiable as pliers under subheading 8203.20.60."  Def.'s Resp. Pl.'s 56.3 Statement ¶ 3.

Statement ¶ 34.   The subject merchandise is capable of gripping, holding, clamping, and/or pulling.[7]  Pl.'s 56.3 Statement ¶ 35; Def.'s Resp. Pl.'s 56.3 Statement ¶ 35.

## DISCUSSION

### I.  Motion to Reconsider

Defendant moves the court to reconsider its opinion.[8]  See Def.'s Br. 3–7, 14–15.

Specifically, Defendant requests that the court reconsider its definition of "pliers," which

---

[7] In its response to Plaintiff's 56.3 Statement of Undisputed Material Facts, Defendant:

> Admits that Lucus Aff. ¶ 27 supports the contention that plaintiff's locking pliers may accomplish one or more of the following operations or uses – gripping, holding, clamping, pulling or cutting. Admits that Lucus Aff. ¶ 28 supports that contention that plaintiff's long nose locking pliers may accomplish one or more of the following operations or uses – gripping, holding, and clamping. Otherwise denies that the cited evidence supports this statement.

Def.'s Resp. Pl.'s 56.3 Statement ¶ 35.  Defendant does not put the facts of the statement in dispute.  In order to raise a genuine issue of material fact, it is insufficient for a party to rest upon mere allegations or denials, but rather that party must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial.  Anderson, 477 U.S. at 248–49; Processed Plastic Co., 473 at 1170; Barmag Barmer Maschinenfabrik AG, 731 F.2d at 835–36; see also Int'l Cargo & Sur. Ins. Co. v. United States, 15 CIT 541, 542–43, 779 F. Supp. 174, 176 (1991) (the party opposing summary judgment must "designate 'specific facts'" to indicate the existence of a genuine issue for trial, quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), quoting Fed. R. Civ. P. 56(e)).  Each statement in an opponent's response controverting any statement of material fact in the movant's 56.3 statement must be followed by citation to evidence which would be admissible.  USCIT R. 56.3(c).  Defendant has not provided any support for its partial denial of Plaintiff's statement, and thus has not put the facts of the statement in dispute to raise a genuine issue of material fact.

[8] Plaintiff asserts that Defendant's motion is improper because Rule 54(b) requires finality and there has not been a final judgment in this case.  See Pl.'s Reply Mot. Summary J. 9–10, July 12, 2017, ECF No. 59 ("Pl.'s Reply").  It appears that Plaintiff makes this argument focusing on the first part of Rule 54(b), which discusses final judgments.  See USCIT R. 54(b).  However, the second part of Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  USCIT R. 54(b).  A court retains the power to revisit and revise interlocutory orders pursuant to Rule 54(b).  See Cobell v. Norton, 355 F. Supp. 2d 531, 539

(footnote continued)

Defendant alleges is "overly inclusive," its definition of "wrenches," which Defendant argues is exclusive of certain products marketed as wrenches, and its determination that the tariff term covering wrenches is an eo nomine provision.  See id. at 6.  Defendant argues that the court possesses the authority to reconsider the opinion, as USCIT Rule 54(b) authorizes the court to "reconsider any of its interlocutory opinions and orders issued in advance of a final judgment."  Id. at 4; see USCIT R. 54(b).  For the reasons that follow, the motion to reconsider is denied.

Pursuant to USCIT Rule 54(b), "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  USCIT R. 54(b).  USCIT Rule 54(b) mirrors Rule 54(b) of the Federal Rules of Civil Procedure.  See Fed. R. Civ. Proc. 54(b).  Generally, a court has the discretion to grant a motion to reconsider brought under Rule 54(b) "as justice requires," meaning when the court determines that "reconsideration is necessary under the relevant circumstances."  Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005).  Factors a court may weigh when contemplating reconsideration include whether there has been a controlling or significant change in the law or whether the court previously "patently" misunderstood the parties, decided issues beyond those presented, or failed to consider controlling decisions or data.  See, e.g., In re Papst Licensing GmbH & Co. KG

---

(D.D.C. 2005).  Further, Plaintiff argues that Defendant is not entitled to reconsideration pursuant to Rule 59(e) because the motion was filed more than 30 days after the order was issued.  Pl.'s Reply 11; see USCIT R. 59(e).  However, Defendant does not move for reconsideration pursuant to USCIT Rule 59(e), and there is no time limit for a motion pursuant to USCIT Rule 54(b).  See USCIT R. 54(b).

Litigation, 791 F. Supp. 2d 175, 182–83 (D.D.C. 2011); Singh v. George Washington

Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005). The movant carries the burden of proving

that "some harm, legal or at least tangible," would accompany a denial of the motion.

Cobell, 355 F. Supp. 2d at 540.

Under this standard, Defendant's motion must be denied. Defendant has not

demonstrated circumstances requiring reconsideration, offering no reasons for

reconsideration beyond its disagreement with the court's opinion. See Def.'s Br. 6.

Defendant has not asserted that there has been a controlling or significant change in the

law or that the court previously misunderstood the parties, decided issues beyond those

presented, or failed to consider controlling decisions or data. See Singh, 383 F. Supp.

2d at 101. Instead, Defendant seeks to remake the same arguments already made and

considered by the court, on the basis of the same record and under the same law. See

In re Papst Licensing GmbH & Co. KG Litigation, 791 F. Supp. 2d at 182–83.

Disagreement with the court's determinations, without more, is not sufficient cause for

reconsideration. See Singh, 383 F. Supp. 2d at 101. Defendant also has not asserted

or proven that some harm or injustice would result if the order is not reconsidered. See

Cobell, 355 F. Supp. 2d at 540. Accordingly, Defendant has not demonstrated that justice

requires reconsideration under these circumstances. Therefore, Defendant's motion for

reconsideration is denied.

## II.  Summary Judgment Motion

Plaintiff argues that undisputed facts demonstrate that the subject merchandise

meets the definition of pliers and requests the court to find that the subject merchandise

is, as a matter of law, properly classifiable within 8203.20.6030, HTSUS.[9]  <u>See</u> Pl.'s Br.

14–27.  The court agrees with the Plaintiff.

       Tariff classification is determined according to the General Rules of Interpretation

("GRI"), and, if applicable, the Additional U.S. Rules of Interpretation, of the HTSUS.

<u>BenQ Am. Corp. v. United States</u>, 646 F.3d 1371, 1376 (Fed. Cir. 2011).  The court must

determine the correct classification of subject merchandise, notwithstanding the

classifications proffered by the parties.  <u>Jarvis Clark Co. v. United States</u>, 733 F.2d 873,

878 (Fed. Cir. 1984).  Determining the correct classification of merchandise involves two

steps.  First, the court determines the proper meaning of any applicable tariff provisions,

which is a question of law.  <u>See</u> <u>Link Snacks, Inc. v. United States</u>, 742 F.3d 962, 965

(Fed. Cir. 2014).  Second, the court determines whether the subject merchandise properly

falls within the scope of the tariff provisions, which is a question of fact.  <u>Id.</u>  Where no

genuine "dispute as to the nature of the merchandise [exists], then the two-step

classification analysis collapses entirely into a question of law."  <u>Id.</u> at 965–66 (citation

omitted).

       To determine the proper meaning of applicable tariff provisions, the court first

construes the language of the headings in question "and any relative section or chapter

---

[9] Subheading 8203.20.6030, HTSUS, covers:

       Files, rasps, pliers (including cutting pliers), pincers, tweezers, metal cutting
       shears, pipe cutters, bolt cutters, perforating punches and similar hand tools, and
       base metal parts thereof: Pliers (including cutting pliers), pincers, tweezers and
       similar tools, and parts thereof: Other: Other (except parts): Pliers.

Subheading 8203.20.6030, HTSUS.

notes." GRI 1.  The terms of the HTSUS "are construed according to their common and

commercial meanings, which are presumed to be the same."  <u>Carl Zeiss, Inc. v. United</u>

<u>States</u>, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing <u>Simod Am. Corp. v. United States</u>,

872 F.2d 1572, 1576 (Fed. Cir. 1989)); <u>see</u> <u>BenQ Am. Corp.</u>, 646 F.3d at 1376.  The court

defines HTSUS tariff terms relying upon its own understanding of the terms and may

"consult lexicographic and scientific authorities, dictionaries, and other reliable

information sources."  <u>Carl Zeiss, Inc.</u>, 195 F.3d at 1379.  The court may also be aided

by the Harmonized Commodity Description and Coding System's Explanatory Notes.[10]

<u>StoreWALL, LLC v. United States</u>, 644 F.3d 1358, 1363 (Fed. Cir. 2011).  In determining

the common and commercial meaning of an eo nomine tariff term, the court should also

consider if the tariff term nonetheless implicates the use of the article.  <u>See</u> <u>GRK Canada,</u>

<u>Ltd. v. United States</u>, 761 F.3d 1354, 1358–59 (Fed. Cir. 2014).

    In <u>Irwin Indus. Tool Co.</u>, the court discerned the common and commercial meaning

of the tariff terms at issue, aided by dictionary definitions and industry standards.  <u>See</u>

<u>Irwin Indus. Tool Co.</u>, 41 CIT at __, 222 F. Supp. 3d at 1216–26.  The court discerned

that the common and commercial meaning of the term "wrench" as it appears in

subheading 8204.12.00, HTSUS, refers to "a hand tool that has a head with jaws or

sockets having surfaces adapted to snugly or exactly fit and engage the head of a fastener

(such as a bolt-head or nut) and a frame with a singular handle with which to leverage

---

[10] The Explanatory Notes, while not controlling, provide interpretive guidance.  <u>E.T. Horn Co. v.</u>
<u>United States</u>, 367 F.3d 1326, 1329 (Fed. Cir. 2004).  All citations to the Explanatory Notes are
to the 2013 version, the most recently promulgated edition at the time of the entries of the subject
merchandise.  The 2012 version of the Explanatory Notes is the same in relevant part.

hand pressure to turn the fastener without damaging the fastener's head." Id., 41 CIT at

__, 222 F. Supp. 3d at 1221.  The court further found that the common and commercial

meaning of the term "pliers" as it appears in subheading 8203.20.6030, HTSUS, refers to

"a versatile hand tool with two handles and two jaws that are flat or serrated and are on

a pivot, which must be squeezed together to enable the tool to grasp an object." Id., 41

CIT at __, 222 F. Supp. 3d at 1221–22, 1224.  The court discerned that the common and

commercial meaning of the term "vises, clamps and the like" refers to "tools with a frame

and two opposing jaws, at least one of which is adjustable, which are tightened together

with a screw, lever, or thumbnut, to press firmly on an object and thereby hold the object

securely in place while the user is working." Id., 41 CIT at __, 222 F. Supp. 3d at 1225–

26.

Undisputed facts demonstrate that each of Plaintiff's hand tools at issue in this

case are classifiable as a matter of law as pliers within subheading 8203.20.6030,

HTSUS.  Specifically, undisputed facts demonstrate that the products: 1) are versatile

hand tools, 2) have two handles, and 3) have two jaws, that are flat or serrated and are

on a pivot, which can be squeezed together to enable the tools to grasp an object.

**Curved jaw locking pliers**

Undisputed facts demonstrate that Plaintiff's curved jaw locking pliers meet the

requirements of the definition of pliers.  The curved jaw locking pliers is a versatile hand

tool, capable of gripping, holding, clamping, pulling or cutting.  Pl.'s 56.3 Statement ¶ 35;

Def.'s Resp. Pl.'s 56.3 Statement ¶ 35.  Curved jaw locking pliers have two handles and

two serrated jaws on a fulcrum.  Pl.'s 56.3 Statement ¶ 13; Def.'s Resp. Pl.'s 56.3

Statement ¶ 13.  The jaws close, and may or may not be locked, together to enable the tool to grasp an object.  Pl.'s 56.3 Statement ¶¶ 34, 39; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 34, 39.

**Curved jaw locking pliers with wire cutter**

Undisputed facts demonstrate that Plaintiff's curved jaw locking pliers with wire cutter meet the requirements of the definition of pliers.  The curved jaw locking pliers with wire cutter is a versatile hand tool, capable of gripping, holding, clamping, pulling or cutting.  Pl.'s 56.3 Statement ¶ 35; Def.'s Resp. Pl.'s 56.3 Statement ¶ 35.  Curved jaw locking pliers with wire cutter have two handles and two serrated jaws on a fulcrum.  Pl.'s 56.3 Statement ¶ 13; Def.'s Resp. Pl.'s 56.3 Statement ¶ 13.  The jaws close, and may or may not be locked, together to enable the tool to grasp an object.  Pl.'s 56.3 Statement ¶¶ 34, 39; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 34, 39.

**Long nose locking pliers with wire cutter**

Undisputed facts demonstrate that Plaintiff's long nose locking pliers with wire cutter meet the requirements of the definition of pliers.  The long nose locking pliers is a versatile hand tool, capable of gripping, holding, clamping, pulling or cutting.  Pl.'s 56.3 Statement ¶ 35; Def.'s Resp. Pl.'s 56.3 Statement ¶ 35.  Long nose locking pliers have two handles and two serrated jaws on a fulcrum.  Pl.'s 56.3 Statement ¶¶ 48–49; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 48–49.  The jaws close, and may or may not be locked, together to enable the tool to grasp an object.  Pl.'s 56.3 Statement ¶¶ 34, 39; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 34, 39.

**Large jaw locking pliers**

Undisputed facts demonstrate that Plaintiff's large jaw locking pliers meet the requirements of the definition of pliers.  The large jaw locking pliers is a versatile hand tool, capable of gripping, holding, clamping, or pulling.  Pl.'s 56.3 Statement ¶ 35; Def.'s Resp. Pl.'s 56.3 Statement ¶ 35.  Large jaw locking pliers have two handles and two serrated jaws on a fulcrum.  Pl.'s 56.3 Statement ¶ 13; Def.'s Resp. Pl.'s 56.3 Statement ¶ 13.  The jaws close, and may or may not be locked, together to enable the tool to grasp an object.  Pl.'s 56.3 Statement ¶¶ 34, 39; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 34, 39.

**Straight jaw locking pliers**

Undisputed facts demonstrate that Plaintiff's straight jaw locking pliers meet the requirements of the definition of pliers.  The straight jaw locking pliers is a versatile hand tool, capable of gripping, holding, clamping, or pulling.  Pl.'s 56.3 Statement ¶ 35; Def.'s Resp. Pl.'s 56.3 Statement ¶ 35.  Straight jaw locking pliers have two handles and two serrated jaws on a fulcrum.  Pl.'s 56.3 Statement ¶ 13; Def.'s Resp. Pl.'s 56.3 Statement ¶ 13.  The jaws close, and may or may not be locked, together to enable the tool to grasp an object.  Pl.'s 56.3 Statement ¶¶ 34, 39; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 34, 39.

Finally, none of the models at issue is classifiable as "vises, clamps and the like." In Irwin Indus. Tool Co., the court discerned that the common and commercial meaning of the tariff term "vises, clamps and the like" refers to tools with a frame and two opposing jaws, at least one of which is adjustable, which are tightened together with a screw, lever, or thumbnut, to press firmly on an object and thereby hold the object securely in place while the user is working.  See Irwin Indus. Tool Co., 41 CIT at __, 222 F. Supp. 3d at

1224–26.  To support a determination that the subject merchandise is classifiable within

the subheading for "vises, clamps and the like," undisputed facts would have to establish

that: 1) the subject tools have a frame and two opposing jaws, at least one of which is

adjustable, 2) the tools' jaws are tightened together with a screw, lever, or thumbnut, and

3) the tools' jaws press firmly on an object and thereby hold the object securely in place

while the user is working.  Facts have not been established to support a determination

that the subject merchandise meets the requirements of this definition; to the contrary,

undisputed facts demonstrate that the subject merchandise does not possess the

characteristics required to meet this definition.  At a minimum, although the subject

merchandise has two jaws, Pl.'s 56.3 Statement ¶ 13; Def.'s Resp. Pl.'s 56.3 Statement

¶ 13, it has not been established that the jaws are opposing or that at least one of the

jaws is adjustable.  To the contrary, it has been established that the hand tools are

composed of "two metal levers joined at a fulcrum or pivot that result in two handles on

one side of the fulcrum and two shorter toothed jaws on the other side of the fulcrum,"

Pl.'s 56.3 Statement ¶ 13; Def.'s Resp. Pl.'s 56.3 Statement ¶ 13; this connection at the

center of the lever suggests that the jaws at the end of the lever are not directly opposed.

Additionally, it has not been established that the jaws are tightened together using a

screw, lever, or thumbnut.  Instead, it has been established that the jaws are connected

by a pivot at the center, Pl.'s 56.3 Statement ¶ 13; Def.'s Resp. Pl.'s 56.3 Statement ¶ 13,

and that the tools function by gripping the handles together to open the jaws and locking

the jaws on the object using the tools' "compound leverage system."  Pl.'s 56.3 Statement

¶ 34; Def.'s Resp. Pl.'s 56.3 Statement ¶ 34.  Therefore, the tools at issue in this case do

not possess the characteristics required to meet the definition of vises or clamps.  The

subject merchandise is properly classifiable as "pliers" within subheading 8203.20.6030,

HTSUS.  See Jarvis Clark Co., 733 F.2d at 878.

In opposing summary judgment with respect to each of these models, Defendant

concedes the subject merchandise possesses the physical characteristics of "pliers,"

pursuant to the court's definition, Def.'s Br. 5, but attempts to resurrect arguments the

court has already considered and rejected.  Defendant argues that the court erred by not

excluding from the definition of "pliers" tools that lock.[11]  Id. at 5–6.  Defendant again

invokes Assoc. Consumers v. United States, 5 CIT 148, 565 F. Supp. 1044 (1983), to

argue that the subject hand tools should be classified as wrenches.[12]  Id. at 8–12.

---

[11] Although Defendant argues that the court's definition for wrenches is too narrow, and the court's definition for pliers is too broad, Defendant provides just one dictionary definition for each tool, defining a wrench as "a hand tool that usu[ally] consists of a bar or lever with adapted or adjustable jaws, lugs, or sockets either at the ends or between the ends and is used for holding, twisting, or turning a bolt, nut, screwhead, pipe or other object," id. at 6 (quoting Webster's Third New International Dictionary 2639 (Philip Babcock Gove, Ph.D. and Merriam-Webster Editorial Staff eds., 1981)), and defining pliers as "small pincers [usually] with long roughened jaws for holding small objects or for bending and cutting wire."  Id. at 5–6 (quoting Webster's Third New International Dictionary 1741 (Philip Babcock Gove, Ph.D. and Merriam-Webster Editorial Staff eds., 1981)).  Neither of these definitions undercut the court's holding in Irwin Indus. Tool Co. Further, Defendant fails to address any of the multiple sources relied upon in the court's prior opinion Irwin Indus. Tool Co., 41 CIT at __, 222 F. Supp. 3d at 1217–24.  Defendant also invokes one of the colloquial names of several products not before the court ("locking wrenches," "Swedish pattern pipe wrenches," and "oil filter wrenches") to support its claim that the court's definition of wrenches is too narrow.  Def.'s Br. 6–7, 12–13.  The classification of these products is not before the court.  Moreover, to the extent that Defendant references these products as anecdotal support for its desired definition, it appears that Defendant has selected just one of several names for these products, as Plaintiff points out that Swedish pattern pipe wrenches and oil filter wrenches are also sold as pliers.  See Pl.'s Reply Mot. Summary J. 38–39, July 12, 2017, ECF No. 59.

[12] As the court explained in Irwin Indus. Tool Co., Assoc. Consumers interprets the prior statute, the TSUS, which was replaced by the HTSUS and "the Court's prior determination of a common meaning of a term, based on an interpretation of a tariff provision under the TSUS, is not

(footnote continued)

Defendant also once again argues that the use of the subject merchandise supports its classification as wrenches.[13]  Id. at 6–8.  The court's prior opinion properly considered whether use was implicated in the meaning of the tariff term at issue as well as in the meaning of the other tariff terms raised by the Plaintiff.  See Irwin Indus. Tool Co., 41 CIT at __, 222 F. Supp. 3d at 1219–21, 1223–1224, 1225–26 (discussing GRK Canada, Ltd., 761 F.3d at 1358–59), 1221–24 (discerning the meaning of the tariff term "pliers"), 1227 (discussing Assoc. Consumers v. United States, 5 CIT 148, 565 F. Supp. 1044).  As discussed above, absent sufficient cause, which Defendant has not shown, the court will not revisit arguments made on the basis of the same law and facts that it has already

---

controlling as to a determination under the HTSUS."  Irwin Indus. Tool Co., 41 CIT at __, 222 F. Supp. 3d at 1227.  Although Defendant argues that the court's definitions in Irwin Indus. Tool Co. will "create an apparent conflict with the Federal Circuit" because Associated Consumers, 5 CIT 148, 565 F. Supp. 1044, was affirmed by the Federal Circuit, Def.'s Br. 12, Associated Consumers is non-precedential and non-binding, as it was affirmed without opinion and interpreted a different statute.  See Associated Consumers, 727 F.2d 1120 (Fed. Cir. 1983).  CBP is not being asked to deviate from Associated Consumers; the case does not apply here.

[13] Defendant states that

> [i]n Quon Quon, the court found that the "woven rattan imports were not baskets because they were designed for use as patio furniture."  Similarly, here, while the locking hand tools at issue may superficially resemble pliers in that they have jaws and two handles, they were designed and intended for use as wrenches.

Def.'s Br. 7 (citing Irwin Indus. Tool Co., 41 CIT at __, 222 F. Supp. 3d at 1220).  However, if a product does not possess the physical characteristics of a wrench, it does not become a wrench under Quon Quon simply because someone might use it as a wrench.  As stated in the court's prior opinion,

> [a] wrench is designed for turning fasteners without damaging the fastener's head.  A wrench must possess certain physical characteristics (a frame with a singular handle; a head with jaws or sockets having surfaces that snugly or exactly fit and engage the head of a fastener) that are a function of the intended use of a wrench to exert pressure on the fastener to turn it without damaging the fastener's head.

Irwin Indus. Tool Co., 41 CIT at __, 222 F. Supp. 3d at 1221.  Moreover, Defendant has not raised any facts to support its assertion that the subject tools, which possess the physical characteristics of pliers, are not in fact used as pliers.  See Def.'s Resp. 7.

considered.  <u>See</u> <u>In re Papst Licensing GmbH & Co. KG Litigation</u>, 791 F. Supp. 2d at

182–83.

## CONCLUSION

For the foregoing reasons, the subject merchandise at issue in this case is properly

classifiable as "pliers" within subheading 8203.20.6030, HTSUS.   Therefore, Plaintiff's

motion for summary judgment is granted and Defendant's motion for reconsideration is

denied.  Judgment will enter accordingly.


                                                      <u>  /s/ Claire R. Kelly  </u>
                                                      Claire R. Kelly, Judge

Dated: September 21, 2017
            New York, New York